IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FOSTER POULTRY FARMS, INC., ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. 2:17-CV-00483-WS-M |
| THE WATER WORKS & SEWER ) BOARD OF THE CITY OF DEMOPOLIS, ) | |
| Defendant. ) | |

## COMPLAINT

## PARTIES

1. Plaintiff, Foster Poultry Farms, Inc. (herein, "Foster Farms"), is a business entity incorporated under the laws of the state of California with its principal place of business and headquarters (*i.e.*, Foster Farms' "nerve center" where the majority of its administrative and executive functions are performed), located at 1000 Davis Street, Livingston, California. Foster Farms owns and operates a food processing facility in Demopolis, Alabama, and is duly registered and qualified to do business in the State of Alabama.

2. Defendant, The Water Works and Sewer Board of the City of Demopolis (herein "Water Board"), is a non-profit, business entity incorporated under the laws of the state of Alabama with its principal place of business and

1

headquarters (*i.e.*, "nerve center") located at 103 East Capital Street, Demopolis, Alabama. The Water Board is obligated by law to provide water services to individuals and businesses in the area comprising the City of Demopolis, Alabama, and its environs. This includes the location of the Foster Farms Demopolis plant which is situated in an industrial park created by the city of Demopolis, Alabama.

## JURISDICTION

3.  This Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332: the parties are citizens of different states (California and Alabama, respectively) and the amount in controversy exceeds $75,000.00, as set forth below.

## FACTS

4.  Foster Farms adopts and realleges the allegations of paragraphs 1-3 of the Complaint as if fully set forth herein.

5.  The Certificate of Incorporation executed November 3, 1948, for the "Water Works Board of the City of Demopolis" (predecessor entity to the Water Board) states in paragraph 5:

> "The objects for which the corporation is formed are to acquire, construct, operate, maintain, improve and extend a water works plant or plants and system or systems and any part or ports thereof in the City of Demopolis, Alabama, and in the territory surrounding said city . . .."

Exhibit "A".

6. The Foster Farms plant located in Demopolis, Alabama, hereinafter sometimes referred to as "the plant"), is within the service territory the Water Board.

7. The Water Board has historically provided adequate water service to the plant to meet its production and fire suppression (safety) needs pursuant to the Water Board's legal obligations.

8. At all times material, Foster Farms has timely paid in full all invoices from the Water Board in exchange for the provision of adequate water services.

9. In or about March of 2014, the Water Board began to implement changes to its water delivery system in order to address certain maintenance issues that the system was experiencing.

10. The changes to the water delivery system were represented by the Water Board at that time as needed to improve the system so as to provide better water services. However, after these "improvements" were made, the system thereafter periodically and routinely failed to meet the plant's basic needs for water volume and pressure, including causing unannounced and unplanned water outages, adversely affecting the plant's production, the fire suppression system, and placing Foster Farms employees and capital assets at risk. The reduced capacity of the system to meet Foster Farms' needs was documented in hydrant

flow tests conducted in conjunction and coordinated with the Water Board as recently as August 3, 2017.

11.     The failures of the Water Board to meet its legal obligations to provide adequate water services, including, but not limited to, unannounced and unplanned water outages, caused the plant to shut down its production. There are approximately 40 documented incidences of low water pressure, no pressure, and/or flow between March of 2014 to the present date. These unannounced, unplanned water supply issues caused a total production time loss of 67.78 hours (3827 minutes); negative overhead costs impact of $260,275.00; and, approximately $133,894.00 in negative labor costs impact totaling $394,169.00 in damages.

12.     During and following these plant shut-downs, Foster Farms, on several occasions, attempted to work with the Water Board in order to resolve the water issues.

13.     On June 15, 2016, the Water Board executed a "Statement of Intent" (Exhibit "B") in which the Water Board committed to complete "the project to finish lines and related work necessary to improve and complete the secondary water service line to the Foster Farms plant, including bringing back on line the Foster Farms water tower" by September 15, 2016; however, the Water Board failed to meet its written commitment.

14. Throughout this time-frame, Foster Farms continued to express dissatisfaction with the lack of positive results from the Water Board. In June 2017, the Water Board imposed new waste water restrictions and burdens on Foster Farms' plant operations by lowering the permitted soluble oil and grease in its waste water discharge from 50 mg/l to 5 mg/l.

15. Foster Farms alleges that the imposition of this new waste water discharge restriction was an arbitrary and capricious exercise of the Water Board's authority in retaliation for Foster Farms' efforts to have the Water Board meet its legal obligations to provide adequate water services to the plant and/or to pressure Foster Farms to back off of its demands regarding same.

16. The plant employs in excess of 400 individuals who are required to work at various times within the plant's production facilities. These individuals are potentially at risk of harm should the Water Board fail to meet its obligations and responsibilities to provide adequate water volume and pressure for the plant's fire suppression system if a fire event occurs.

17. The plant's significantly valuable capital assets (building structure, equipment, inventory, *etc*.) and future production capabilities are also at risk should the Water Board fail to meet its obligations and responsibilities to provide adequate water volume and pressure for the plant's fire suppression system if a fire event occurs.

18. The plant's employees' jobs would also be at risk should the Water Board fail to meet its obligations and responsibilities to provide adequate water volume and pressure for the plant's fire suppression system if a fire event occurs. The positive economic benefit that the Foster Farms plant provides to the city of Demopolis, the community, and the families of its employees is also at risk.

19. Further, from 2014 through 2016, the Water Board, through its employees, damaged the plant's parking lot by using a backhoe for multiple excavations of Foster Farms' parking lot for repair of line breaks. Despite demands from Foster Farms, the Water Board has refused to repair the damage to the parking lot or otherwise compensate Foster Farms for the damage caused by the Water Board. The cost to repair the damaged parking lot is approximately $25,000.00.

20. In addition, due to the failure of the Water Board to meet its obligations as aforesaid, Foster Farms was required to take action over time at its cost to attempt to remediate the inadequate water volumes and pressure that the Water Board, through its system, was no longer providing. These actions included, but are not limited to, the following:

    a. $7,000.00 for the purchase and installation of a pressure relief valve;

  b. $42,865.00 for the purchase and installation of two pressure reducing valves and separate the fire system water supply from the operational system;

  c. $3,381.00 to repair one of the pressure reducing valves;

  d. $2,062.00 to rent a flow and pressure meter to monitor service;

  e. $7,700.00 to purchase and install a flow and pressure reading meter to monitor service;

  f. $9,600.00 for additional charges from Water Board to clean the waste treatment plant headwaters; and,

  g. $3,800.00 for additional charges from Water Board to clean lift station.

21. As a proximate result of the Water Board's failure and/or refusal to meet its legal obligations to provide adequate water services to Foster Farms, Foster Farms has been damaged.

22. Foster Farms' past damages include, but are not limited to, the installation of a pressure release valve and costs of mitigation outlined in paragraph 20 of approximately $76,408.00; losses from the 40 documented incidences of low/no pressure and/or flow outlined in paragraph 11 of approximately $394,169.00; damage to the Foster Farms' plant parking lot caused by the Water Board estimated to exceed $25,000.00; Foster Farms damages were

the direct result of the Water Board's provision of inadequate water service to the Foster Farms plant.

23. The total *minimum* past damage sustained and claimed in this suit by Foster Farms to date for the damages and losses caused by the failure of the Water Board to meet its legal obligation to provide adequate water services to the plant is approximately $495,577.00.

24. The harm caused to Foster Farms by the continued failure or refusal of the Water Board to meet its legal obligations to provide adequate water services is on-going and reasonably expected to continue in the future. The failure of the Water Board to provide adequate water volume and pressure in particular to the fire suppression system is of grave concern to Foster Farms as involving matters of health and safety. Injunctive relief in the form of an Order from the Court compelling the Water Board to cease and desist from failing to provide necessary and vital water volumes and pressure is necessary to address an on-going, chronic safety issue.

## COUNT ONE – NEGLIGENCE

25. Foster Farms adopts and realleges the allegations of paragraphs 1-24 of the Complaint as if fully set forth herein.

26. At all times material, the Water Board owed a duty at common law to Foster Farms to provide it with adequate water service, including providing

sufficient water flow and pressure for the plant's operating needs and for fire safety.

27. By previously providing adequate water volumes and pressure to Foster Farms to meet its needs, the Water Board assumed a duty to Foster Farms to continue to do so.

28. The Water Board negligently breached its duties to Foster Farms by failing to provide adequate water service, resulting in, among other things, inadequate water volumes and pressure, and unannounced and unplanned water outages, to the Foster Farms plant located in Demopolis, Alabama.

29. The Water Board's negligent breach of duties has exposed the Foster Farms plant and Foster Farms' employees to fire safety concerns; has negatively impacted Foster Farms plant operations; and has proximately caused Foster Farms to incur significant economic loss and damages as set out in paragraph 22 above.

WHEREFORE, premises considered, Foster Farms demands judgment in the amount of Four Hundred Ninety-Five Thousand Five Hundred Seventy-Seven and No/100 ($495,577.00) Dollars, plus prejudgment interest, and such sums as the jury may assess, together with costs of this proceeding, and for such other and further relief as this Court deems appropriate given the foregoing.

### COUNT TWO – WANTONNESS

30. Foster Farms adopts and realleges the allegations of paragraphs 1-29 of the Complaint as if fully set forth herein.

31. At all times material, the Water Board owed a duty at common law to Foster Farms to provide it with adequate water service, including providing sufficient water flow and pressure for the plant's operating needs and for fire safety.

32. By previously providing adequate water volumes and pressure to Foster Farms to meet is needs, the Water Board assumed a duty to Foster Farms that it would continue to do so.

33. The Water Board wantonly breached its duties to Foster Farms by consistently failing and/or refusing to provide adequate water service, resulting in, among other things, inadequate water volumes and pressure, and unannounced and unplanned water outages, to the Foster Farms plant located in Demopolis, Alabama.

34. The Water Board's wanton breach of duties has exposed the Foster Farms plant and Foster Farms' employees to fire safety concerns; has negatively impacted Foster Farms plant operations; and has proximately caused Foster Farms to incur significant economic loss and damages as set out in paragraph 22 above.

35. At all times material to the allegations of this Complaint, the Water Board has been on notice and had actual knowledge of the water supply issues to

the Foster Farms Demopolis plant and the actual and potential harm this was causing. Most, if not all, of these issues were reported, among other ways, as follows: in a letter dated May 16, 2016 (Exhibit "C"); in meetings between Foster Farms and the Water Board on October 17, 2016, and August 3, 2017; and in various telephone calls by Foster Farm plant management and the Water Board.

36. The chronic failure and/or refusal of the Water Board to meet its legal obligations to provide adequate water services to the plant is tacitly, if not expressly, admitted and evidenced by the Statement of Intent. Exhibit "B".

37. Any purported efforts by the Water Board to address the water concerns and complaints of Foster Farms were merely *pro forma* and not in good faith.

38. The Water Board acted, or failed to act, either intentionally or with a conscious and reckless indifference and disregard for the rights and safety of Foster Farms and its employees.

39. The wanton breach of the Water Board's duties to Foster Farms proximately caused damage to Foster Farms, including, but not limited to, the damages set out in paragraph 22 above.

WHEREFORE, premises considered, Foster Farms demands judgment in the amount of Four Hundred Ninety-Five Thousand Five Hundred Seventy-Seven and No/100 ($495,577.00) Dollars, plus prejudgment interest, punitive damages, other

sums as the jury may assess, together with costs of this proceeding, and for such other and further relief as this Court deems appropriate given the foregoing.

## COUNT THREE – BREACH OF CONTRACT

40. Foster Farms adopts and realleges the allegations of paragraphs 1-39 of the Complaint as if fully set forth herein.

41. Foster Farms and the Water Board have an express or implied contract whereby in consideration for payment of monthly fees for adequate water service by Foster Farms, the Water Board has agreed to provide adequate water services, including adequate water volumes and pressure, to meet the plant's operational and fire protection/suppression needs.

42. Foster Farms has performed its obligations under the contract by timely making payments to the Water Board for the water services which are the subject and purpose of the contract.

43. The Water Board has failed to perform its obligations under the contract by and through its failure to provide adequate water service to the plant as described herein.

44. The Water Board is in breach of its contract with Foster Farms.

45. As a proximate result of this breach of contract, Foster Farms has suffered direct and consequential damages as described in paragraph 22 above.

WHEREFORE, premises considered, Foster Farms demands judgment in the amount of Four Hundred Ninety-Five Thousand Five Hundred Seventy-Seven and No/100 ($495,577.00) Dollars, plus prejudgment interest, and such sums as the jury may assess, together with costs of this proceeding, and for such other and further relief as this Court deems appropriate given the foregoing.

## **COUNT FOUR – BREACH OF CONTRACT**

### **Third Party Beneficiary**

46. Foster Farms adopts and realleges the allegations of paragraphs 1-45 of the Complaint as if fully set forth herein.

47. The Water Board had an express or implied contract with the city of Demopolis to meet the water supply and fire protection needs of the city of Demopolis and its environs, which includes an industrial park created by the city of Demopolis, Alabama, to promote and enhance the economic well-being of the community.

48. The Foster Farm plant is located within the industrial park created by the city of Demopolis, Alabama, noted in the preceding paragraph of this Complaint.

49. Foster Farms was, and is, an intended third-party beneficiary of the express or implied contract between the Water Board and the city of Demopolis, Alabama.

50.     The Water Board breached its express or implied contract with the city of Demopolis by failing to supply water services and water at sufficient volumes and pressure to the Foster Farms plant.

51.     As a proximate result of this breach of contract, Foster Farms as a third-party beneficiary has been damaged as described above.

WHEREFORE, premises considered, Foster Farms demands judgment in the amount of Four Hundred Ninety-Five Thousand Five Hundred Seventy-Seven and No/100 ($495,577.00) Dollars, plus prejudgment interest, and such sums as the jury may assess, together with costs of this proceeding, and for such other and further relief as this Court deems appropriate given the foregoing.

## **COUNT FIVE – INJUNCTIVE RELIEF**

52.     Foster Farms adopts and realleges the allegations of paragraphs 1-51 of the Complaint as if fully set forth herein.

53.     Foster Farms avers that the failure of the Water Board to supply adequate water volume and pressure publication as alleged herein continues to present chronic, serious, and significant health, safety and production problems for the Foster Farms plant.

54.     Absent the intervention of this Court's equitable jurisdiction, Foster Farms will continue to suffer irreparable damage and harm to its business and the health and well-being of its employees will remain at risk as described herein.

55. There is no adequate remedy at law to fully prevent or reasonably minimize future damage to Foster Farms or to remediate the risk of potential harm to its employees and capital assets caused by the failure of the Water Board to provide adequate water services, except for the intervention of the Court by entry of an appropriate injunctive order compelling the Water Board to cease and desist from failing to meet its obligation to provide adequate water services to the plant as described herein.

56. Foster Farms prays for an Order of Preliminary and Permanent Injunction, pursuant to Rule 65, Federal Rules of Civil Procedure, as follows:

   a. Permanently enjoining the Water Board from failing to meet its obligations to provide adequate water services to the plant as described herein;

   b. Awarding attorney's fees and other costs and expenses to which Foster Farms is entitled under the premises;

   c. Awarding such other relief as may be equitable and to which Foster Farms is entitled.

### **COUNT SIX – DECLARATORY JUDGMENT**

57. Foster Farms adopts and realleges the allegations of paragraphs 1-56 of the Complaint as if fully set forth herein.

58.     On June 19, 2017, the Water Board passed Resolution 2017-004 (Exhibit "D") by which it amended its "Ordinance" to provide a new rate structure for the permitted discharge of oils and grease into the Demopolis waste water system.

59.     The new rate structure, which applies to "industries or users of the Demopolis Sewer System", lowered the permitted discharge level for oil and grease from 50 mg/l to 5 mg/l.  The surcharge rates were decreased for most categories of discharges however, surcharge rates on oil and grease discharges doubled from $ .30 per pound of excess over fifty mg/l to $ .60 per pound of excess over 5 mg/l.  Foster Farms is the primary customer that is adversely affected by the reduction in permitted oil and grease discharge levels and the corresponding increase in the surcharge rate structures.

60.     A violation of the permitted discharge rate will result in a surcharge being assessed by the Water Board against the discharger.

61.     Given the nature of the food processing and production at the plant, it will be difficult for Foster Farms to meet this new rate on a consistent basis.  The Water Board knew this at the time it passed Resolution 2017-004.

62.     Resolution 2017-004 and the new surcharge rate was enacted and imposed by the Water Board with no input from the community or from "industries

or users" of the Demopolis Sewer System, and was designed for the purpose of raising revenues by assessing surcharges on discharge standards that will be unreasonably difficult if not impossible to consistently meet, amounting to nothing more than a tax or fine by the Water Board imposed on the sewer systems' users.

63. The Water Board's decision to enact and impose the new rate for permitted oil and grease discharges was arbitrary and capricious and done for the ulterior and illegal purpose of retaliation against Foster Farms for its efforts to have the Water Board meet its legal obligations to provide adequate water services to the plant and/or to pressure Foster Farms to back off of its demands regarding same.

64. A justiciable controversy exists as between the Water Board and Foster Farms over the motives for the enactment of Resolution 2017-004; whether the Water Board acted in an arbitrary and capricious manner for ulterior purposes against Foster Farms; and whether the drastic and severe lowering of the permitted discharge limit from 50 mg/l to 5 mg/l was reasonable, within the Water Board's authority, and supported by reasons not motivated by ulterior purposes or the mere effort to raise revenues by increasing the opportunity to levy what amounts to fines, despite the failure of the Water Board to invite and consider public input over the issue.

WHEREFORE, premises considered, Foster Farms hereby requests the Court take jurisdiction of this claim for declaratory relief pursuant to 28 USC §2201 and Rule 57, Fed.R.Civ.P., hear the evidence, determine the rights of the parties and render a declaratory judgment as to the legal validity of Resolution 2017-004, declaring the same void as being enacted arbitrarily and capriciously by the Water Board for illegal and ulterior purposes, or beyond its lawful authority, and to award such sums to Foster Farms as the Court may assess, including attorneys' fees and costs of this proceeding, and for such other and further relief as this Court deems appropriate given the foregoing.

Respectfully submitted on October 31, 2017.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

/s/*Mack B. Binion*
Mack B. Binion (BINIM7778)
Charles J. Potts (POTTC0053)
Robert E. Clute, Jr. (CLU0001)
Attorneys for Plaintiff, Foster Poultry Farms, Inc.

**BRISKMAN & BINION, P.C.**
Post Office Box 43
Mobile, AL 36601
mbinion@briskman-binion.com
cpotts@briskman-binion.com

**OF COUNSEL:**

**CLUTE & CLUTE, P.C.**

Post Office Box 3125
Mobile, AL 36652-3125
251-345-6188
bob@clutelawfirm.com
rob@clutelawfirm.com

PLEASE SERVE DEFENDANT, THE WATER WORKS AND SEWER BOARD OF THE CITY OF DEMOPOLIS, BY PERSONAL SERVICE, AS FOLLOWS:

Jay Reynolds, Chairman
103 East Capital St
Demopolis, Alabama 36732