# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| FOSTER POULTRY FARMS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION 17-0483-WS-M ) |
| THE WATER WORKS & SEWER BOARD OF THE CITY OF DEMOPOLIS, | ) ) ) ) |
| Defendant. | ) |

## ORDER

This matter comes before the Court on Plaintiff's Emergency Motion to Reopen Discovery (doc. 58). The Motion has been briefed and is now ripe.

**I. Background.**

Plaintiff, Foster Poultry Farms, Inc., brought this action against The Water Works and Sewer Board of the City of Demopolis, alleging a variety of state-law claims arising from what plaintiff describes as inadequate and unreliable water service to its food processing facility in Demopolis, Alabama. Discovery closed on October 12, 2018, and this matter is presently set for trial during the May 2019 civil term. (*See* doc. 13.) On February 25, 2019, the undersigned entered an Order (doc. 57) granting in part and denying in part the Water Board's Motion for Summary Judgment. Of particular note, the February 25 Order dismissed Foster Farms' claim for injunctive relief (Count Five) as moot. In so doing, the Court summarized its reasoning as follows:

> "On this evidence, the Court concludes that no genuine issues of material fact exist, and that there is no longer a live controversy as to the present water service with respect to which a permanent injunction could afford any meaningful relief to Foster Farms. An injunction to require the Water Board to provide adequate water service to Foster Farms would be meaningless and ineffectual, because all evidence before the Court is that (i) the Water Board has in fact provided adequate water service to Foster Farms since June 2018 and (ii) there is no reasonable expectation of reoccurring service disruptions."

(Doc. 57, at 17.)

Just over two weeks later, on March 13, 2019, Foster Farms filed an Emergency Motion to Reopen Discovery. In that Motion, Foster Farms describes a "significant water outage" experienced by its Demopolis plant on February 19, 2019. According to plaintiff, the service interruption lasted for several hours and coincided with a water line break in downtown Demopolis, causing outages to numerous Water Board customers downtown. (Foster Farms' plant is not located downtown, but is instead found in Demopolis Industrial Park south of downtown.) Foster Farms suggests that this water service disruption was accompanied by suspicious circumstances, inasmuch as (i) Foster Farms' outage happened contemporaneously with a water line break in downtown Demopolis; (ii) the Water Board informed Foster Farms that the downtown leak was on another system, but that Foster Farms' tank was operating normally; and (iii) the Water Board declined to answer Foster Farms' query about why it experienced a water service outage if the tank were operating normally. As such, the February 19 incident raises significant (and, to date, unanswered) questions as to whether Foster Farms' water supply comes exclusively from the adjacent tower, or whether it might be connected to the downtown line in some manner demonstrating "outside the fence" service problems that may be recurring or chronic.

The premise of Foster Farms' Emergency Motion is that these circumstances (all of which transpired <u>after</u> the close of discovery and <u>after</u> summary judgment briefing had concluded) reasonably call into question the Water Board's representations that Foster Farms' water service issues post-June 2018 have been the result of "inside the fence" issues at Foster Farms itself, rather than "outside the fence" issues that are the Water Board's responsibility. Moreover, if "outside the fence" service issues are discovered, Foster Farms posits, its claim for injunctive relief (Count Five, dismissed on summary judgment) should be reinstated for trial. On that basis, Foster Farms requests that discovery be reopened for the limited purpose of allowing it to investigate the causes of the February 19 water outage and whether there may be systemic "outside the fence" problems causing disruption to Foster Farms' water service and warranting reinstatement of Count Five. The Water Board opposes this request.

**II.    Analysis.**

As noted, the applicable Rule 16(b) Scheduling Order (doc. 13) fixed a discovery cutoff date of October 12, 2018. Essentially, plaintiff's Emergency Motion seeks modification of this Scheduling Order deadline to create a new window for supplemental discovery. That request is

governed by Rule 16(b)(4), Fed.R.Civ.P., which provides, "A schedule may be modified only for good cause and with the judge's consent." *Id.* The "good cause" standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); *see also Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent."). "[D]iligence, not lack of prejudice, is the key to the Rule 16(b)(4) inquiry." *Rogers v. Hartford Life and Acc. Ins. Co.*, 2012 WL 2395194, *3 (S.D. Ala. June 22, 2012). The burden of establishing the requisite good cause / diligence rests squarely on Foster Farms, the party seeking relief from the lapsed deadline in the original Scheduling Order. *See, e.g., Volvo Financial Services v. JRD Contracting, Inc.*, 2018 WL 1913550, *1 (S.D. Ala. Feb. 15, 2018). Here, plaintiff has shown the requisite diligence. Simply put, Foster Farms could not have pursued discovery concerning the February 19 water outage during the discovery period fixed by the Scheduling Order because that event did not occur until long after discovery had closed. Rule 16(b)(4) poses no impediment to the relief sought by Foster Farms.

Nonetheless, the Water Board advances several arguments in opposition to the Emergency Motion. First, defendant correctly cites authority standing for the proposition that motions for additional discovery are disfavored where significant discovery has already been obtained and the court has already decided summary judgment motions.[1] But there are extenuating circumstances here. Allowing Foster Farms to take limited discovery concerning the February 19 outage might be helpful in unearthing new facts bearing directly on the viability of Count Five. This is not a case of dilatory conduct or a litigant seeking information that is certain to be unhelpful; rather, it is one in which the movant reasonably requests an opportunity to explore if and how a particular post-summary judgment occurrence might warrant reconsideration of a summary judgment ruling that dismissed a particular cause of action.

---

[1] *See, e.g., Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) ("Generally, a motion for additional discovery is properly denied where a significant amount of discovery has already been obtained and further discovery would not be helpful."); *EarthCam, Inc. v. OxBlue Corp.*, 703 Fed.Appx. 803, 813-14 (11th Cir. July 27, 2017) (finding no abuse of discretion in district court's denial of motion to reopen discovery where, *inter alia*, defendants had already filed two fully-briefed motions for summary judgment when plaintiff filed motion to reopen discovery).

Second, the Water Board indicates that the requested supplemental discovery could not possibly be helpful because the February 19 event was a "single, isolated event," that cannot support a claim for injunctive relief. (Doc. 61, at 2.) But that assertion underscores the very reasons why discovery is appropriate. Foster Farms should not have to take defendant's word or accept on faith that the February 19 outage was an isolated event that it is unlikely to recur; rather, considerations of fairness and justice point squarely in favor of affording Foster Farms an opportunity to investigate the causes of that event to ascertain whether it is indeed "isolated" and "unlikely to recur," or whether it may be symptomatic of some deeper structural issue at the Water Board that might reasonably support a viable claim for injunctive relief.

Third, the Water Board protests that the Emergency Motion shows that Foster Farms "seeks to hold the Water Board to some guarantee of 'perfect' water service." (Doc. 61, at 3.) The undersigned does not agree with that characterization. There was an unexplained, significant disruption in water service to the Foster Farms plant a few weeks ago. Despite inquiry, Foster Farms never received an adequate explanation from the Water Board as to what went wrong, and circumstances were such as to raise at least a reasonable possibility that the Foster Farms outage may have been connected to a more widespread downtown outage. If that were true, then the Water Board's representations and evidence as to the nature and quality of Foster Farms' water connection would reasonably be in dispute. Here is the point: All evidence in the record at the time of the summary judgment ruling suggested that any water issues Foster Farms experienced since June 2018 have been the product of "inside the fence" rather than "outside the fence" issues. The February 19 water outage occurred under circumstances that might call that conclusion into question. Far from evincing an expectation of "perfect" water service, Foster Farm's Emergency Motion seeks to explore the possibility that there remain systemic, "outside the fence" problems with the reliability of the water service being provided to the Demopolis plant that are attributable to the Water Board. Were those kinds of facts to be developed via supplemental discovery, then genuine issues of fact might be created as to whether the post-June 2018 water problems at Foster Farms' plant have been caused by defects in Water Board service, rather than unknown gremlins in Foster Farms' internal systems.

Fourth, defendant objects that granting plaintiff's Emergency Motion to "extend discovery in an infinite fashion" (doc. 61, at 3) would run directly contrary to the stated objective of fostering judicial economy. But the Court has no intention of reopening discovery indefinitely

or allowing an open-ended period of time for this litigation to proliferate or languish in discovery limbo. Indeed, the discovery that Foster Farms is requesting is quite narrow in scope, and the Court's expectation is that it can and will be completed expeditiously with diligence and good-faith cooperation by both sides. Moreover, the undersigned is of the opinion that granting the Emergency Motion would advance the cause of judicial economy. If discovery were denied and this action were forced to trial in its present posture, then Foster Farms would be left with the choice of (i) relinquishing its now-dismissed Count Five, even though supplemental discovery potentially could resuscitate it; or (ii) filing a second civil action against the Water Board stating a new claim for injunctive relief predicated on the February 19 event. All appearances are that Foster Farms would select the latter option, meaning that instead of one Foster Farms / Water Board lawsuit, there would be two, at vastly different stages of the litigation process. The inefficiencies from splitting these claims into two separate lawsuits are obvious and substantial. Accordingly, the Court does not credit the Water Board's argument that granting the Emergency Motion would be at cross-purposes with the objective of fostering judicial economy.

Fifth, the Water Board observes that Foster Farms' apparent motivation for seeking supplemental discovery is to locate evidence that might support a motion for reconsideration of the summary judgment order dismissing Count Five.[2] There is nothing inappropriate about such aspirations. Nonetheless, the Water Board insists that reopening discovery "under these circumstances and for this purpose is improper." (Doc. 61, at 4.) According to defendant, Foster Farms is using the Emergency Motion to make an end run around the provisions of Rule 6(b)(2), Fed.R.Civ.P., by seeking an enlargement of the time for moving for relief from the February 25 Order granting summary judgment as to Count Five. The Water Board is correct that Rule 6(b) prohibits courts from extending the time for filing motions under Rules 59(b), (d), and (e), and 60(b). But the time for Foster Farms to seek reconsideration of the February 25 Order on this basis has not expired, and therefore does not need to be extended. If Foster Farms' supplemental discovery efforts were to yield new evidence supporting the Count Five injunctive relief cause of

---

[2] This is hardly revelatory; indeed, Foster Farms readily admits to harboring that objective. In its Reply, Foster Farms writes as follows: "Candidly, depending on the evidence, Foster Farms would reserve the right to request the Court to reconsider its ruling on the Water Board's Motion for Summary Judgment wherein the Motion was granted as to Count 5 of the Amended Complaint." (Doc. 65, at 7 n.4.)

action, then plaintiff could properly file a Rule 60(b)(2) motion for relief from the summary judgment order. That rule authorizes relief from a final judgment or order for "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Rule 60(b)(2), Fed.R.Civ.P. Rule 60(b)(2) motions must be filed "within a reasonable time," and "no more than a year after the entry of the judgment or order." Rule 60(c)(1). Viewed in this light, plaintiff's Emergency Motion does not constitute an improper attempt to enlarge expired deadlines for a Rule 60(b) motion.

### III. Conclusion.

For all of the foregoing reasons, the Court finds that Foster Farms has shown good cause to modify the discovery deadline in the Scheduling Order for a limited time and scope, and that the Water Board's arguments in opposition to the request are unpersuasive. Accordingly, it is **ordered** as follows:

1. Plaintiff's Emergency Motion to Reopen Discovery (doc. 58) is **granted**;
2. Discovery is reopened for a 60-day period expiring on **June 3, 2019**, for the narrow and limited purpose of allowing Foster Farms to collect evidence relating to the causes of the February 19 water outage at the Foster Farms plant and its nexus (if any) to the downtown water outage experienced contemporaneously;
3. In obtaining discovery on this narrow issue, plaintiff is authorized to serve reasonable requests for production on the Water Board, and to take the depositions of Brooks McCants and any other Water Board officials or employees that may be reasonably appropriate;
4. The Court expects the parties to work together diligently and in good faith to schedule and complete this discovery within the authorized 60-day window, so as not unduly to delay the trial setting. This discovery period will not be extended absent a showing of extraordinary circumstances and diligence;
5. Plaintiff is authorized to file a Rule 60(b) motion or other appropriate motion to reconsider the dismissal of Count Five on or before **June 24, 2019**. Should plaintiff elect not to seek reconsideration based on the results of this supplemental discovery, it must file a notice to that effect on or before **June 24, 2019**; and

6. The Final Pretrial Conference scheduled for **April 9, 2019** at **9:00 a.m.**, the jury selection setting of **April 30, 2019**, and the **May 2019** trial setting are hereby **continued** pending this supplemental discovery period.

DONE and ORDERED this 1st day of April, 2019.

                                                s/ WILLIAM H. STEELE
                                                UNITED STATES DISTRICT JUDGE